IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-03363-SBP

F.T.,[1]

        Plaintiff,

v.

MARTIN J. O'MALLEY,[2] Commissioner of Social Security,

        Defendant.

---

**OPINION AND ORDER**

---

**Susan Prose, United States Magistrate Judge**

Plaintiff F.T., brings this action under Title XVI, 42 U.S.C. §§ 1381, *et seq.*, of the Social Security Act (the "Act") for review of the Commissioner of Social Security's (the "Commissioner") final administrative decision denying his claims for supplemental security income ("SSI"). The court has carefully considered the parties' briefs, the social security administrative record, and the applicable law. No hearing is necessary.

For the reasons below, the court **AFFIRMS** the Commissioner's decision.

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] Martin J. O'Malley is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See* 42 U.S.C. § 405(g) (an action survives regardless of any change in the person occupying the office of the Commissioner of Social Security).

**BACKGROUND**

On May 21, 2020, Plaintiff filed applications for SSI benefits. AR: 23.[3] He alleged disability beginning on November 14, 2019. AR: 23. His claim was denied initially on February 8, 2021, and upon reconsideration on September 28, 2021. *Id.* Plaintiff attended a hearing on June 14, 2022. *Id.* After the hearing, Administrative Law Judge Matthew C. Kawalek ("ALJ") issued an unfavorable decision dated July 13, 2022. AR: 23-42. The Appeals Council denied review on November 7, 2022, making the ALJ's decision the final agency decision. AR: 2.

Plaintiff then sought review with this court. ECF No. 1. Plaintiff filed his opening Brief, ECF No. 13 ("Brief"), Defendant responded, ECF No. 18 ("Response"), and Plaintiff replied, ECF No. 19 ("Reply").

**SSI FRAMEWORK**

A person is disabled within the meaning of the Act "only if his physical and/or mental impairments preclude him from performing both his previous work and any other 'substantial gainful work which exists in the national economy.'" *Wilson v. Astrue*, No. 10-cv-00675-REB, 2011 WL 97234, at *1 (D. Colo. Jan. 12, 2011) (quoting 42 U.S.C. § 423(d)(2)). "However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months." *Brandon v. Colvin*, 129 F. Supp. 3d 1231, 1232 (D. Colo. 2015) (citing *Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995)). "[F]inding that a

---

[3] The court uses "ECF No. ---" to refer to specific docket entries in CM/ECF and uses "AR: ---" to refer to documents in the administrative record. The administrative record is found at ECF No. 9.

2

claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time." *Fritz v. Colvin*, No. 15-cv-00230-JLK, 2017 WL 219327, at *8 (D. Colo. Jan. 18, 2017) (emphasis in original) (quoting *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994)).

The Commissioner is required to follow a "five-step sequential evaluation process" which guides the determination of whether an adult claimant meets the definition of disabled under the Social Security Act. 20 C.F.R. § 416.920(a)(i)-(iv) (SSI evaluation of disability of adults). If it can be determined that the claimant is disabled or not at a step, the Commissioner makes the determination and does not continue to the next step. 20 C.F.R. § 416.920(a)(4). However, if that determination cannot be made, the Commissioner proceeds to the next step. *Id.*

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If so, the claimant is "not disabled regardless of [ ] medical condition, . . . age, education, and work experience." 20 C.F.R. § 416.920(b).

Step two assesses whether the claimant has a medically severe impairment or combination of impairments under 20 C.F.R. § 416.909. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not show "any impairment or combination of impairments which significantly limits [their] physical or mental ability to do basic work activities," the claimant is "not disabled" regardless of "age, education, and work experience." 20 C.F.R. § 416.920(c).

Step three tests whether the claimant's "impairment(s) meets or equals" a listed impairment and "meets the duration requirement[.]" 20 C.F.R. § 416.920(a)(4)(iii). If so, the

claimant is disabled regardless of "age, education, and work experience." 20 C.F.R. § 416.920(d). If not, the Commissioner analyzes the claimant's residual functional capacity, or "RFC," which "is the most [the claimant] can still do despite [their] limitations." 20 C.F.R. §§ 416.902(e), 416.945(a)(1).

Step four considers whether the claimant "can still do [their] past relevant work" based on their RFC. 20 C.F.R. §§ 416.920(a)(4)(iv); 416.920(e). To be disabled, the claimant's "impairment(s) must prevent [them] from doing [their] past relevant work." 20 C.F.R. § 416.920(f). For guidance on this determination, "ALJs often seek the views of 'vocational experts.'" *See Biestek v. Berryhill*, 587 U.S. 97, 100 (2019) (citing 20 C.F.R. §§ 404.1566(e), 416.966(e)). If the claimant's severe impairment prevents them from doing their "past relevant work" or they have no "past relevant work," the analysis continues to the final step. 20 C.F.R. § 416.920(g)(1).

Lastly, step five considers the RFC assessment and the claimant's vocational factors—"age, education, and work experience." 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g)(1). Any other work the claimant "can adjust to must exist in significant numbers in the national economy (either in the region where [they] live or in several regions in the country)." 20 C.F.R. § 416.960(c)(1). The Commissioner is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [their] residual functional capacity and vocational factors." 20 C.F.R. § 416.960(c)(1). If the claimant "can make an adjustment to other work," they are "not disabled." 20 C.F.R. § 416.920(g)(1).

The claimant has the burden of proof at steps one through four. The Commissioner bears the burden at step five to prove there is other work the claimant can perform. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The burden-shifting at step five, however, does not shift the plaintiff's burden to prove his RFC. 20 C.F.R. § 416.960(c)(2) ("We are not responsible for providing additional evidence about your residual functional capacity because we will use the same residual functional capacity assessment that we used to determine if you can do your past relevant work.").

## ALJ'S DECISION

The ALJ found that Plaintiff satisfied step one and determined at step two that he had the following severe impairments:

> plantar fasciitis of the left foot; degenerative joint disease of the bilateral hands; osteoarthritis of the right knee; spondylolisthesis and bilateral L5 pars fractures of the lumbar spine with radiculopathy, emphysema; incarcerated incisional hernia/ventral hernia; idiopathic peripheral autonomic neuropathy; episodic recurrent benign paroxysmal positional vertigo; obesity; mild cognitive impairment; a depressive bipolar, or related disorder; an anxiety disorder; and posttraumatic stress disorder ("PTSD").

AR: 26 (cleaned up). At step three, however, the ALJ found that these impairments did not meet or medically equal a per se disabling impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1. AR: 27-30. Between steps three and four, the ALJ assessed Plaintiff's RFC to be:

> a reduced range of light work as defined in 20 CFR 416.967(b) meaning the claimant can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds. He can stand and/or walk 4 hours and sit 6 hours of an 8-hour workday. The claimant can never climb ladders, ropes, or scaffolds, and he can occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs. He can frequently handle with the bilateral upper extremities. He can tolerate no more than frequent exposure to temperature extremes or pulmonary irritants, and he can have no exposure to hazards, including unprotected heights or operating heavy machinery.

> Mentally, he is limited to understanding, remembering, carrying out, and maintaining attention and concentration on no more than simple tasks, defined specifically as those job duties that can be learned in up to 30 days' time. He can sustain only ordinary routines and make no more than simple, work-related decisions. He can tolerate no more than occasional interaction with coworkers, supervisors, and the general public.

AR: 37.

At step four, the ALJ found that this RFC precluded Plaintiff's past relevant work. AR: 40. At step five, however, the ALJ found that Plaintiff's RFC would allow him to perform the jobs of marking clerk (DOT 209.857-034), tabber/tagger (DOT 794.687-058), and routing clerk (DOT 222.587-038); he further determined that these jobs existed in significant numbers in the national economy. AR: 41-42. With this, the ALJ concluded that Plaintiff was not disabled under the Act. AR: 42.

## LEGAL STANDARDS

In reviewing the Commissioner's decision, the court "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014). "The phrase 'substantial evidence' is a 'term of art,' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek*, 587 U.S. at 102 (quoting *T-Mobile South, LLC v. Roswell*, 574 U.S. 293, 301 (2015)). In applying the substantial-evidence standard,

> a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contacts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion. *Id.* at 102-103 (cleaned up); *see also Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) ("Substantial evidence requires more than a scintilla but less than a preponderance.") (quoting *U.S. Cellular Tel., L.L.C., v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003)). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Zoltanski*, 372 F.3d at 1200 (quoting *U.S. Cellular*, 340 F.3d at 1133).

The court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Knight*, 756 F.3d at 1175 (citation omitted); *see also Zoltanski*, 372 F.3d at 1200 (the court may not displace the Commissioner's choice between two fairly conflicting views, even if the court would have made a different choice if the matter had been before it de novo). Even so, this court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)). "[A] reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Garland v. Dai*, 593 U.S. 357, 369 (2021) (cleaned up).

In addition, this court's review is guided by the harmless error doctrine, which the Tenth Circuit Court of Appeals applies to social security disability cases. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). A court "may apply harmless error in the social security context 'where, based on material the ALJ did at least consider (just not properly), [it] could confidently say that no reasonable administrative factfinder, following the

7

correct analysis, could have resolved the factual matter in any other way.'" *Armijo v. Astrue*, 385 F. App'x 789, 792 (10th Cir. 2010) (quoting *Allen*, 357 F.3d at 1145).

## ANALYSIS

Plaintiff argues that the ALJ mischaracterized the findings and opinions of two state agency psychological consultants: James Sturgis, Ph.D., and Paula Kresser, Ph.D. (collectively, "State Consultants"). *See* AR: 107-11, 134-38. During his RFC calculation, the ALJ found that Plaintiff's medical records did reflect symptoms of anxiety and depression, *see* AR: 35; however, the ALJ emphasized that one of Plaintiff's treating physicians found that Plaintiff did not appear acutely depressed and suggested that Plaintiff may engage in symptom magnification. AR: 36 (citing Ex. 6F); *see also* AR: 32 (citing Exs. 3F, 5F, 6F). The ALJ also ran through Plaintiff's mental health visits to highlight the "normal" observations made at those visits and the general stability of Plaintiff's symptoms. AR: 36-37 (citing Exs. 8F at p. 5; 11F at pp. 3, 12, 15, 25-26; 14F at pp. 2-3, 5, 9, 18-20).

When it came to the State Consultants' findings and opinions, the ALJ found them unpersuasive, reasoning that

> their opinions are not supported by the evidence as a whole. The State Consultants found Plaintiff has moderate limitations, which is consistent with the evidence. However, the State Consultants found Plaintiff can perform tasks which are simple, 1-2 step, and sometimes detailed, including 3-4 steps; can sometimes learn, recall, and perform complex tasks requiring making informed and complicated judgments; can relate to others on a superficial work basis; and can adapt to most work situations offering forewarning regarding changes in work processes. (Ex. 2A/9, 19; 3A/13, 23-24).
>
> However, the evidence supports that Plaintiff is more limited with task complexity, decisions, and routines given his mental health symptoms. He complained of depression with problems with concentration and attention, irritability, and feelings

8

> of hopelessness and worthlessness. He had guarded behavior, abnormal speech, flat affect, as well as depressed, irritable, and anxious mood. (Ex. 3F/78-79). He had agitated attitude and rapid speech. (Ex. 8F/5). Further, the term superficial is not a good descriptor with occasional being a more vocationally relevant limitation in the ability to relate to others.
>
> The record shows that Plaintiff has problems understanding and remembering information, adapting or managing himself, interacting with others, and sustaining concentration and attention due to symptoms and complications related to mental impairments, which supports moderate limitations in those areas. As such, he is limited to understanding, remembering, carrying out, and maintaining attention and concentration on no more than simple tasks, defined specifically as those job duties that can be learned in up to 30 days' time; can sustain only ordinary routines and make no more than simple, work-related decisions; and can tolerate no more than occasional interaction with coworkers, supervisors, and the general public.

AR: 38 (cleaned up).

Plaintiff raises two points in support of his argument that the ALJ mischaracterized the State Consultants' findings and opinions. The court will take each in turn.

### A. Interaction with others

For his first argument, Plaintiff directs the court to Dr. Sturgis's examination, where he wrote that Plaintiff is "markedly limited" when it comes to having appropriate interactions with the general public. AR: 110. According to Plaintiff, the ALJ erred when he stated that Dr. Sturgis had found Plaintiff to have only moderate limitations while interacting with others. *See* AR: 38. But Plaintiff focuses on Dr. Sturgis's statement without consideration for the context in which it appears.

First, Dr. Sturgis was tasked with performing a mental residual functional capacity (MRFC) assessment; the instructions on the MRFC form Dr. Sturgis filled out states:

> The questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment

9

> is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion. This discussion(s) is documented in the explanatory text boxes following each category of limitation (i.e., understanding and memory, sustained concentration and persistence, social interaction and adaptation). Any other assessment information deemed appropriate may be recorded in the MRFC - Additional Explanation text box.

AR: 107. While Dr. Sturgis did write that Plaintiff had "marked limitations" while interacting with the general public, that response was to one of the guiding questions preceding the narrative discussion for the "social interaction" section of the assessment. *See* AR: 109-10. Under the question asking for Dr. Sturgis's narrative explaining Plaintiff's social interaction capacities and/or limitations—i.e., the "actual mental residual functional capacity assessment," *see* AR: 107—Dr. Sturgis wrote "ae," which the court takes to be a reference to the additional explanation box at the end of the assessment. AR: 110; *see also* AR: 111. There, Dr. Sturgis wrote that Plaintiff

> Can perform tasks which are simple, 1-2 step, and sometimes detailed, including 3-4 steps. Can sometimes perform complex tasks, able to learn, recall and perform complex tasks requiring making informed and complicated judgments. Can relate to others on a superficial, work basis. Can adapt to most work situations offering forewarning regarding changes in work processes.

AR: 111.

The Commissioner argues that Dr. Sturgis never found Plaintiff to have "marked limitations" when interacting with others because such a finding is absent from the parts of Dr. Sturgis's examination comprising the true MRFC assessment. The court agrees. The form Dr. Sturgis filled out makes clear that the MRFC assessment is comprised of the examiner's narrative discussions, not the questions that assist in the lead-up to those discussions.

But additional context gives even more reason to credit the ALJ's characterization of Dr. Sturgis's findings. The MRFC assessment asked Dr. Sturgis to calculate Plaintiff's limitations with social interactions.[4] *See* AR: 109. Dr. Sturgis found that Plaintiff had "marked limitations" regarding his ability to "interact appropriately with the *general public*." AR: 110 (emphasis added). Below that question, though, Dr. Sturgis also rated Plaintiff's ability to ask questions or seek assistance; accept instructions and respond to criticism; get along with coworkers or peers; and adhere to socially appropriate behavior and basic standards of neatness and cleanliness. *See id.* On these questions, Dr. Sturgis assigned two "not significantly limited" and two "moderately limited" ratings. *See id.* Thus, it appears that Plaintiff's ability to interact with the general public was but one component of his ability to interact with others. That Plaintiff had a higher degree of limitation on one component does not dictate that his overall limitation be of the same magnitude.

Finally, additional confirmation for the ALJ's characterization is that Dr. Sturgis wrote elsewhere in his assessment that Plaintiff has a moderate limitation while interacting with others and further noted that Plaintiff's impairments "result in moderate global limitations." AR: 101-02.

With this added context, the court concludes that the ALJ did not err when he stated that Dr. Sturgis had found Plaintiff to have moderate limitations with interacting with others.

---

[4] For further context, interacting with others is one of the four paragraph B functional areas that an ALJ must consider when a claimant alleges mental impairments. *See* 20 C.F.R. § 416.920a. In essence, the MRFC assessment asks a state psychological consultant to address these four functional areas. *See* AR: 100-02, 107-11.

B.     **Occasional versus superficial interactions**

The State Consultants both found Plaintiff limited to "superficial" interactions with others, AR: 111, 138, but the ALJ rejected this finding—at least partially—because "the term superficial is not a good descriptor with occasional being a more vocationally relevant limitation in the ability to relate to others." AR: 38. In the end, the ALJ concluded that

> [m]entally, [Plaintiff] is limited to understanding, remembering, carrying out, and maintaining attention and concentration on no more than simple tasks, defined specifically as those job duties that can be learned in up to 30 days' time. He can sustain only ordinary routines and make no more than simple, work-related decisions. He can tolerate no more than *occasional* interaction with coworkers, supervisors, and the general public.

AR: 31 (emphasis added).

Plaintiff argues the RFC should reflect that he is limited to "superficial" interactions, not just "occasional" ones. But caselaw supports the sort of "translation" that the ALJ made here as the combination of restricting Plaintiff to simple, unskilled work with the restriction to only occasional and brief interactions is consistent with the State Consultants' limitation of Plaintiff to "superficial" interactions. *See, e.g.*, *Carver v. Colvin*, 600 F. App'x 616, 620 (10th Cir. 2015) ("Interacting with supervisors in the course of routine supervision over simple work is tantamount to the 'superficial' interaction typically encountered in jobs involving such work. To conclude otherwise would parse the ALJ's language too finely.").

Further, even if the ALJ had erred on this issue, it would be harmless. The jobs that the Vocational Expert identified for Plaintiff require the least possible amount of interaction with others. Response at 13-14 (citing DOT references reflecting the three jobs of marking clerk,

12

tabber/tagger, and routing clerk had the lowest rating possible for interacting with others).[5] Thus, even if the ALJ had adopted the findings Plaintiff argues for, the jobs identified at step five would still be viable employment opportunities for Plaintiff. *See, e.g.*, *Lane v. Colvin*, 643 F. App'x 766, 770 (10th Cir. 2016) (finding argument that ALJ should have found increased limitation regarding interactions with supervisors and co-workers to be harmless error because the ALJ found jobs at step five that would still be available even with the greater limitation).

## CONCLUSION

For the reasons above, the court **AFFIRMS** the Commissioner's decision. Judgment shall enter accordingly.

DATED: September 30, 2024                BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

[5] This basis for harmless error applies equally to Plaintiff's first argument.